```
          IN THE UNITED STATES DISTRICT COURT
      FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
```

**THOMAS F. SMITH,**

        **Plaintiff,**

**v.**                                       **CIVIL ACTION NO. 1:20CV54**
                                                   **(Judge Keeley)**

**THE CITY OF PENNSBORO,**
**a West Virginia Municipal**
**Corporation, and R.T. DAVIS,**

        **Defendants.**

**MEMORANDUM OPINION AND ORDER GRANTING**
**THE CITY OF PENNSBORO'S MOTION TO DISMISS COUNT III**
**OF SMITH'S SECOND AMENDED COMPLAINT [DKT. NO. 37]**

In this civil rights action, the Plaintiff, Thomas Smith ("Smith"), alleges that the Defendant, R.T. Davis ("Officer Davis"), used excessive force to unlawfully arrest and imprison him. He further avers that the Defendant, the City of Pennsboro ("Pennsboro"), is liable for Officer Davis's conduct. Smith filed his Second Amended Complaint on August 28, 2020, seeking relief under 18 U.S.C. § 1983 and the Constitutions of the United States and the State of West Virginia (Dkt. No. 36). On September 8, 2020, pursuant to Federal Rule of Civil Procedure 12(b)(6), Pennsboro moved to dismiss the claim against it in the Second Amended Complaint (Dkt. No. 37). During a scheduling conference on January 7, 2021, after hearing oral argument, the Court **GRANTED** Pennsboro's motion (Dkt. No. 37) and **DISMISSED** Count III of the Second Amended Complaint **WITH PREJUDICE**.

**MEMORANDUM OPINION AND ORDER GRANTING
THE CITY OF PENNSBORO'S MOTION TO DISMISS COUNT III
OF SMITH'S SECOND AMENDED COMPLAINT [DKT. NO. 37]**

**I. BACKGROUND**

On March 29, 2018, as Smith drove through Pennsboro, he noticed that he was being followed by Officer Davis, Pennsboro's Chief of Police (Dkt. No. 36 ¶¶ 6-7, 12).[1] Smith became anxious and eventually pulled off to the side of the road. Id. at ¶¶ 13-15. Officer Davis also pulled off the road, parked behind Smith, and remained in his police cruiser. Id. at ¶ 16. When Smith got out of his vehicle and approached Officer Davis to inquire why he was being followed, Officer Davis "became enraged." Id. at ¶¶ 17-19. A heated exchange followed, during which Smith stated that Officer Davis was harassing him by following him for no reason. Id. at ¶¶ 20-22. Smith's statement prompted Officer Davis to get out of his cruiser and grab for Smith. Id. at ¶ 23. Smith avoided Officer Davis and requested that the rest of their interaction be recorded on video. Id. at ¶¶ 23-24.

Smith and Officer Davis then moved to the front of Davis's cruiser. Id. at ¶ 25. According to Smith, Officer Davis requested to see his driver's license, but when Smith reached for it, Officer Davis grabbed his firearm and told Smith to put his hands in the air. Id. at ¶¶ 26-27. Officer Davis then "grabbed [Smith's] shirt

---

[1] The facts are taken from the Second Amended Complaint and are construed in the light most favorable to Smith. See De'Lonta v. Johnson, 708 F.3d 520, 524 (4th Cir. 2013).

Case 1:20-cv-00054-IMK   Document 61   Filed 02/09/21   Page 3 of 12   PageID #: 305

SMITH V. PENNSBORO ET AL                                    1:20CV54

MEMORANDUM OPINION AND ORDER GRANTING
THE CITY OF PENNSBORO'S MOTION TO DISMISS COUNT III
OF SMITH'S SECOND AMENDED COMPLAINT [DKT. NO. 37]

between his shoulder blades with his right hand, pushed him toward the police cruiser, and placed handcuffs on his left wrist." Id. at ¶ 28.

Smith informed Officer Davis that his right rotator cuff was torn and requested that the officer carefully place the handcuffs on his right wrist. Id. at ¶ 29. Instead, Officer Davis "violently jerked [Smith's] right arm in an upward motion" and separated his arms behind his back before "slamm[ing] them together," causing Smith extreme pain. Id. at ¶¶ 30-31. Smith also informed Officer Davis that he would be injured if placed in the backseat of the cruiser because the area was too small to accommodate his prosthetic leg. Id. at ¶¶ 9-10, 34-35. Officer Davis ignored this warning, "slammed" him into the side of the cruiser, cursed at him, and "shoved" him into the backseat of the cruiser, causing Smith "extreme pain and discomfort." Id. at ¶¶ 36-37.

Officer Davis then charged Smith with Impeding Training,[2] Obstructing an Officer, and Disorderly Conduct. Id. at ¶ 39. After these charges were dismissed on January 22, 2019, Officer Davis ordered that Smith be "re-arrested on the same charges." Id. at ¶¶

---

[2] Smith's criminal complaint attached to Pennsboro's motion to dismiss lists "impeding training" among his charges, but the Criminal Judgment Order states "impeding traffic" (Dkt. Nos. 37-2, 37-5 at 1).

Case 1:20-cv-00054-IMK Document 61 Filed 02/09/21 Page 4 of 12 PageID #: 306

SMITH V. PENNSBORO ET AL                                    1:20CV54

MEMORANDUM OPINION AND ORDER GRANTING
THE CITY OF PENNSBORO'S MOTION TO DISMISS COUNT III
OF SMITH'S SECOND AMENDED COMPLAINT [DKT. NO. 37]

40-41. These charges were later dismissed on May 28, 2019. Id. at ¶ 42.

Based on these facts, Smith has asserted three causes of action (Dkt. No. 36). Count I alleges a § 1983 claim of excessive force against Officer Davis. Count II states false arrest and false imprisonment claims against Officer Davis. Count III asserts that, under Monell v. Department of Social Services, 436 U.S. 658 (1978), Pennsboro is liable for Officer Davis's bad conduct.

## II. LEGAL STANDARD

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) on the ground that it does not "state a claim upon which relief may be granted." When reviewing the sufficiency of a complaint, the district court "must accept as true all of the factual allegations contained in the complaint." Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)). "While a complaint . . . does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp v. Twombly, 550 U.S. 544, 555 (2007) (internal citation omitted). A court is "not bound to

Case 1:20-cv-00054-IMK   Document 61   Filed 02/09/21   Page 5 of 12   PageID #: 307

SMITH V. PENNSBORO ET AL                                           1:20CV54

MEMORANDUM OPINION AND ORDER GRANTING
THE CITY OF PENNSBORO'S MOTION TO DISMISS COUNT III
OF SMITH'S SECOND AMENDED COMPLAINT [DKT. NO. 37]

accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

To be sufficient, "a complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" Anderson, 508 F.3d at 188 n.7 (quoting Twombly, 550 U.S. at 547). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

### III. DISCUSSION

Smith has failed to state a municipal liability claim against Pennsboro based on his failure to plead sufficient facts establishing (1) that Officer Davis was a "final policymaker" for Pennsboro, or (2) that Pennsboro had any policy or custom that caused his alleged constitutional deprivations.

#### A.

Title 42 U.S.C. § 1983 provides a remedy for those who suffer a "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by one acting "under color of any statute, ordinance, regulation, custom, or usage, of any State." Municipalities may be sued directly under § 1983 for monetary relief where the alleged unconstitutional act stems from the actions of a final policymaker or an established municipal policy.

Case 1:20-cv-00054-IMK Document 61 Filed 02/09/21 Page 6 of 12 PageID #: 308

SMITH V. PENNSBORO ET AL                                        1:20CV54

MEMORANDUM OPINION AND ORDER GRANTING
THE CITY OF PENNSBORO'S MOTION TO DISMISS COUNT III
OF SMITH'S SECOND AMENDED COMPLAINT [DKT. NO. 37]

Monell, 436 U.S. at 690; Santos v. Frederick Cty. Bd. Of Comm'rs, 725 F.3d 451, 470 (4th Cir. 2013) (citing Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986)). This "ensures that the municipality is 'responsible' for the alleged violations of a plaintiff's constitutional rights." Id.

**B.**

A municipality may be liable under § 1983 for a single unconstitutional act or decision by its final policymaker. Pembaur, 475 U.S. at 470. However, "courts must distinguish between mere policymaking and final policy making authority because liability only attaches to final policy making authority." Armstrong v. City of Greensboro, 190 F. Supp. 3d 450, 474 (M.D.N.C. 2016) (citing Riddick v. School Bd. Of City of Portsmouth, 238 F.3d 518, 523 (4th Cir. 1987)). A "final policymaking official" has the responsibility and authority to implement final municipal policy with respect to a particular course of action. Pembaur, 475 U.S. at 482-83; see also, Spell v. McDaniel, 824 F.2d 1380, 1386 (4th Cir. 1987) ("'[P]olicymaking authority' implies authority to set and implement general goals and programs of municipal government, as opposed to discretionary authority in purely operational aspects of government.").

Smith's Second Amended Complaint contains only conclusory allegations about Officer Davis's role as Pennsboro's final

Case 1:20-cv-00054-IMK Document 61 Filed 02/09/21 Page 7 of 12 PageID #: 309

SMITH V. PENNSBORO ET AL                                          1:20CV54

**MEMORANDUM OPINION AND ORDER GRANTING
THE CITY OF PENNSBORO'S MOTION TO DISMISS COUNT III
OF SMITH'S SECOND AMENDED COMPLAINT [DKT. NO. 37]**

policymaker. For example, it merely alleges that, "as the Chief of Police[,] Officer Davis is the 'policymaker' with respect to [Pennsboro's] Police department/law enforcement agency" (Dkt. No. 36 at ¶¶ 55-56). It then concludes that "Pennsboro, through its policymaker [Officer Davis,] is liable for [Smith's] harms." Id. at ¶ 61. Smith claims only that, by virtue of Officer Davis's position, he is Pennsboro's policymaker. He does not allege that Pennsboro designated its Chief of Police as a final policymaker. Nor does he explain how Pennsboro vested policymaking authority in Officer Davis, or, if it did, the bounds of such delegation. These threadbare recitations of a municipal liability claim cannot withstand Pennsboro's motion to dismiss.

Smith also fails to designate Officer Davis as a "final policymaker." The Second Amended Complaint refers to him only as a "policymaker." (Dkt. No. 56); Riddick, 238 F.3d at 523. In response to Pennsboro's motion to dismiss, Smith argues that West Virginia Code § 8-14-3 grants chiefs of police the authority to arrest individuals, and therefore Officer Davis's decisions regarding arrests and law enforcement policy therefore are final policymaking decisions for which Pennsboro may be held liable (Dkt. No. 46 at 2-3).[1]

---

[1] Pennsboro urges the Court not to consider Smith's reliance on W. Va. Code § 8-14-3 as he did not include this allegation in the

**MEMORANDUM OPINION AND ORDER GRANTING
THE CITY OF PENNSBORO'S MOTION TO DISMISS COUNT III
OF SMITH'S SECOND AMENDED COMPLAINT [DKT. NO. 37]**

Smith's reliance on § 8-14-3 is misplaced. This statute outlines the "powers, authority, and duties of law enforcement officials" and describes the various responsibilities of police officers, fire marshals, and sheriffs. W. Va. Code § 8-14-3. In relevant part, it permits a chief of police and any member of a municipal police department, any municipal sergeant, any municipal fire marshal, and any deputy sheriff to effectuate arrests. Under Smith's interpretation, each Pennsboro police officer, fire marshal, and sheriff would be a final policymaker, and any arrest by them would be a final policymaking decision for which Pennsboro could be held liable. As this obviously cannot be, his argument that Officer Davis created municipal policy by arresting Smith falls of its own weight. Officer Davis was not a final policymaker, nor did he create a final municipal policy when he arrested Smith. Rather, he exercised his individual discretion in carrying out his duties as a police officer. <u>Spell v. McDaniel</u>, 824 F.2d at 1386.

Moreover, § 8-14-1 specifically limits the decision-making authority of any municipal chief of police by subjecting municipal police forces "to the authority, control and discipline of the administrative authority." Pennsboro Municipal Ordinance § 2-202

---

Second Amended Complaint (Dkt. No. 50 at n. 2). In fairness, to Smith, however, the Court has addressed his argument.

Case 1:20-cv-00054-IMK   Document 61   Filed 02/09/21   Page 9 of 12   PageID #: 311

SMITH V. PENNSBORO ET AL                                         1:20CV54

**MEMORANDUM OPINION AND ORDER GRANTING
THE CITY OF PENNSBORO'S MOTION TO DISMISS COUNT III
OF SMITH'S SECOND AMENDED COMPLAINT [DKT. NO. 37]**

also places Pennsboro police officers under the "control of the Mayor" (Dkt. No. 44 at 3). Pursuant to this statutory guidance, Officer Davis's policymaking authority is limited by both Pennsboro's administrative agency and mayor. Because his decisions are subject to review, he cannot be classified as a "final" policymaker. Even assuming that, as Chief of Police, Officer Davis possessed authority to establish policy for his own department, there is no evidence that such authority permitted him to promulgate municipality-wide policy. Based on this, Smith has failed to plausibly allege that Officer Davis is a final policymaker whose decisions could subject Pennsboro to municipal liability.

### C.

Smith also has failed to plead the existence of any official policy or custom that caused his injuries. A municipality may be liable under § 1983 when the constitutional deprivation arises from a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell, 436 U.S. at 690. "[A] municipality is subject to Section 1983 liability only when its policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the plaintiff's injury." Santos, 725 F.3d at 470. Here, Smith has identified no policy

Case 1:20-cv-00054-IMK Document 61 Filed 02/09/21 Page 10 of 12 PageID #: 312

SMITH V. PENNSBORO ET AL                                                1:20CV54

MEMORANDUM OPINION AND ORDER GRANTING
THE CITY OF PENNSBORO'S MOTION TO DISMISS COUNT III
OF SMITH'S SECOND AMENDED COMPLAINT [DKT. NO. 37]

enacted by Pennsboro's legislative body or promulgated by someone with final policymaking authority that caused Smith's injuries.

Municipal liability may also arise from an informal custom, or "relevant practice so widespread as to have the force of law, though not formally approved by a legislative body." Bd. of the Cnty. Comm'rs v. Brown, 520 U.S. 397, 403 (1997). A custom can include "a municipality's failure to hire, train, supervise, and discipline its employees," but only if the plaintiff demonstrates that the municipality was "deliberately indifferent toward the constitutional rights at stake." Nutter v. Mellinger, 2020 WL 401790, *3 (S.D.W. Va. 2020) (citing City of Canton v. Harris, 489 U.S. 378, 379 (1989)). However, a single incident of alleged unconstitutional conduct is insufficient to plead a custom under Monell See Mull v. Griffith, 2019 WL 5295189, at *6 (N.D. W. Va. 2019) ("[T]here must be 'numerous particular instances' of unconstitutional conduct in order to establish a custom or practice").

Smith has alleged that Officer Davis had "a custom, pattern and practice of committing unlawful acts of violence" (Dkt. No. 36 at ¶ 58). He also has asserted, that because Officer Davis was the Chief of Police, Pennsboro knew of his unlawful acts and "adopted a policy to ratify [Officer Davis's] actions." Id. at ¶¶ 67-68. But again, Smith has failed to include any factual support for

Case 1:20-cv-00054-IMK Document 61 Filed 02/09/21 Page 11 of 12 PageID #: 313

SMITH V. PENNSBORO ET AL                                                1:20CV54

MEMORANDUM OPINION AND ORDER GRANTING
THE CITY OF PENNSBORO'S MOTION TO DISMISS COUNT III
OF SMITH'S SECOND AMENDED COMPLAINT [DKT. NO. 37]

these allegations. To demonstrate Officer Davis's alleged propensity for violence, Smith refers only to the facts surrounding his own arrest and Officer Davis's arrests of Ernest and Anita Owens, as pleaded in Owens v. Pennsboro, 1:20CV55. Notably, Officer Davis did not arrest the Owenses until one year after he arrested Smith.

Smith identifies no other instances of violence by Officer Davis. Nor does he explain how Officer Davis's status as Chief of Police would impute knowledge of his alleged misdeeds to Pennsboro, or how Pennsboro had notice of a pattern of unlawful conduct. Therefore, this single incident of alleged unlawful conduct by Officer Davis is insufficient to establish that Pennsboro was deliberately indifferent to Smith's constitutional rights or that it had adopted a custom of ratifying Officer Davis's alleged unlawful conduct. Mull, 2019 WL 5295189 at *6.

## IV. CONCLUSION

The Court **GRANTS** Pennsboro's motion to dismiss (Dkt. No. 37) and **DISMISSES WITH PREJUDICE** Count III of Smith's Second Amended Complaint (Dkt. No. 36).

It is so **ORDERED**.

SMITH V. PENNSBORO ET AL 1:20CV54

**MEMORANDUM OPINION AND ORDER GRANTING**
**THE CITY OF PENNSBORO'S MOTION TO DISMISS COUNT III**
**OF SMITH'S SECOND AMENDED COMPLAINT [DKT. NO. 37]**

The Clerk **SHALL** enter a separate judgment order in favor of Pennsboro and transmit copies of both Orders to counsel of record.

DATED: February 9, 2021.

 /s/ Irene M. Keeley
 IRENE M. KEELEY
 UNITED STATES DISTRICT JUDGE