IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**THOMAS F. SMITH,**

    **Plaintiff,**

**v.**                                      **Civil Action No. 1:20CV54**
                                            **(Judge Keeley)**

**R.T. DAVIS,**

    **Defendant.**

**MEMORANDUM OPINION AND ORDER**
**DENYING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

For the reasons that follow, the Court **DENIES** the defendant's motion for summary judgment (Dkt. No. 83).

## I. Factual Background

On a motion for summary judgment, courts "view the evidence in the light most favorable to the non-moving party" and refrain from "weighing the evidence or making credibility determinations." Lee v. Town of Seaboard, 863 F.3d 323, 327 (4th Cir. 2017) (quoting Jacobs v. N.C. Admin. Off. of the Cts., 780 F.3d 562, 568-69 (4th Cir. 2015)). The Court therefore recites the following facts in the light most favorable to the plaintiff.

On March 29, 2018, as the plaintiff, Thomas F. Smith ("Smith"), was driving his motor vehicle through the city of Pennsboro, West Virginia (Dkt. No. 36 ¶ 7), the defendant, R.T. Davis ("Officer Davis"), the chief of police for Pennsboro, began

**SMITH v. DAVIS** 1:20CV54

**MEMORANDUM OPINION AND ORDER**
**DENYING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

following him in his police cruiser (Dkt. Nos. 36 ¶¶ 12-13, 64 ¶¶ 12-13). Suspecting that Officer Davis was purposely following him, Smith stopped his vehicle (Dkt. No. 36 ¶¶ 12, 15) and walked back toward Officer Davis's cruiser as it also stopped (Davis Depo. 40; Smith Depo. 66-67). Smith inquired whether Officer Davis had been following him, which Officer Davis denied (Davis Depo. 40; Smith Depo. 68-69). At this point, the parties hotly dispute what happened next.

According to Smith, when he asked whether Officer Davis was following him, Officer Davis became enraged, exited his cruiser, and attempted to grab him (Dkt. No. 36 ¶¶ 18-23). Smith told his children, who were passengers in his vehicle, to begin recording the interaction (Dkt. Nos. 36 ¶ 24, 64 ¶ 24). The parties subsequently moved to the front of Officer Davis's cruiser, where Officer Davis demanded that Smith provide his driver's license (Dkt. Nos. 36 ¶ 26, 64 ¶ 26). But before Smith could do so, Officer Davis arrested him (Dkt. Nos. 36 ¶ 28, 64 ¶ 28).

How Officer Davis placed Smith under arrest is also hotly disputed. According to Smith, Officer Davis grabbed him by his shirt, pushed him toward the police cruiser, and placed handcuffs

2

**SMITH v. DAVIS** 1:20CV54

**MEMORANDUM OPINION AND ORDER**
**DENYING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

on his left wrist (Dkt. No. 36 ¶ 28). Officer Davis then grabbed Smith's right arm and deliberately pulled it after Smith had asked him to be gentle because Smith suffered from a pre-existing injury to his shoulder. Id. ¶¶ 29-30. Before Officer Davis placed handcuffs on his right wrist, Smith claims he pulled Smith's hands apart and then quickly pulled them back together. Id. ¶ 31.

Smith next contends that although he informed Officer Davis that he could not comfortably fit in the cruiser's back seat because he had a prosthetic leg, id. ¶ 35, Officer Davis nevertheless pushed him into the side of the vehicle. Id. ¶ 36. Using vulgar language, he then directed Smith to get inside and shoved him into the police cruiser. Id. ¶¶ 36, 37. Officer Davis generally denies these allegations (Dkt. No. 64 ¶¶ 27-38).

Although the video of the incident confirms Smith's account of Officer Davis's actions while in front of the cruiser, it is difficult to assess the amount of force Officer Davis actually applied (Dkt. No. 84 Ex. C). And it further appears that, rather than being forced into the back of the police cruiser, Smith may have entered the cruiser on his own volition. Id.

3

**SMITH v. DAVIS**  1:20CV54

**MEMORANDUM OPINION AND ORDER**
**DENYING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

After arresting Smith, Officer Davis filed a criminal complaint in the Magistrate Court of Ritchie County, West Virginia, alleging Smith had committed the offenses of (1) Impeding Traffic, in violation of W. Va. Code § 17C-6-3a; (2) Obstructing an Officer, in violation of W. Va. Code § 61-5-17; and (3) Disorderly Conduct, in violation of W. Va. Code § 61-6-1b (Dkt. No. 84-3 at 1-2). These charges were subsequently dismissed, reissued, and ultimately dismissed (Dkt. Nos. 36 ¶ 40-42, 64 ¶ 40-42).

## II. Procedural Background

Smith sued both Officer Davis and the City of Pennsboro (Dkt. Nos. 1, 5, 36). His second amended complaint alleges that (1) pursuant to 42 U.S.C. § 1983, Officer Davis violated Smith's Fourth Amendment rights by arresting him without probable cause and using excessive force during that arrest; (2) under West Virginia law, Officer Davis falsely arrested and falsely imprisoned Smith; and (3) pursuant to Monell v. Department of Social Services of New York, 436 U.S. 658 (1978), the City of Pennsboro was liable for failing to discipline Officer Davis for his unconstitutional actions (Dkt. No. 36). The Court previously granted Pennsboro's motion to dismiss Count Three pursuant to Fed. R. Civ. P. 12(b)(6)

4

**SMITH v. DAVIS**                                                   **1:20CV54**

**MEMORANDUM OPINION AND ORDER**
**DENYING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

(Dkt. No. 61), thus only the claims against Officer Davis remain. These are the subject of the instant summary judgment motion that is now fully briefed and ripe for decision.

### III. Standard of Review

Under Fed. R. Civ. P. 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party," and "[a] fact is material if it might affect the outcome of the suit under the governing law." Jacobs v. N.C. Admin. Off. of the Cts., 780 F.3d 562, 568 (4th Cir. 2015) (quoting 10A Charles A. Wright et al., Federal Practice & Procedure § 2728 (3d ed. 1998)).

A motion for summary judgment should be granted if the nonmoving party fails to make a showing sufficient to establish the existence of an essential element of his claim or defense upon which he bears the burden of proof. Celotex v. Catrett, 477 U.S. 317, 323 (1986). That is, once the movant shows an absence of evidence on one such element, the nonmovant must then come forward with evidence demonstrating there is indeed a genuine issue for

5

**SMITH v. DAVIS** 1:20CV54

**MEMORANDUM OPINION AND ORDER**
**DENYING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

trial. Id. at 323-24. The existence of a mere scintilla of evidence supporting the nonmovant's position is insufficient to create a genuine issue; rather, there must be evidence on which a jury could reasonably find for the nonmovant. Anderson v. Liberty Lobby, 477 U.S. 242, 252 (1986). Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979) (citing Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950)).

### IV. Discussion

#### A. Fourth Amendment

With respect to Smith's claim under the Fourth Amendment, Officer Davis argues that summary judgment is appropriate because Smith's claims lack evidentiary support; alternatively, he contends he is entitled to qualified immunity (Dkt. No. 84 at 6-10). Smith responds that summary judgment should be denied because the evidence establishes that Officer Davis lacked probable cause to arrest Smith and used excessive force (Dkt. No. 86-1 at 4-12).

**SMITH v. DAVIS** 1:20CV54

**MEMORANDUM OPINION AND ORDER
DENYING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Nor, Smith argues, is Officer Davis entitled to qualified immunity. Id.

To succeed on a § 1983 claim, the plaintiff must show that (1) he was deprived of a right "secured by the Constitution and the laws" of the United States; and (2) the individual who deprived him of the right was acting under color of state law. Lugar v. Edmonson Oil Co., 457 U.S. 922, 930 (1982) (internal citations omitted). Generally, a public employee acts under color of state law "while acting in his official capacity or while exercising his responsibilities pursuant to state law." Conner v. Donnelly, 42 F.3d 220, 223 (4th Cir. 1994) (quoting West v. Atkins, 487 U.S. 42, 50 (1988)). Section 1983, however, "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, at 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144, n.3 (1979)).

Smith claims that Officer Davis violated his clearly-established Fourth Amendment rights because he had no probable cause to arrest Smith, and in the process of the arrest, employed

7

**SMITH v. DAVIS** 1:20CV54

**MEMORANDUM OPINION AND ORDER**
**DENYING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

excessive force. There is no dispute that Officer Davis was acting under color of state law.

Officer Davis contends there is a lack of evidentiary support for Smith's Fourth Amendment claim and argues this Court can resolve his motion for summary judgment without reaching the issue of qualified immunity. But because the qualified immunity analysis necessarily involves an examination of whether a constitutional violation occurred, the Court will collapse the Fourth Amendment inquiry into the qualified immunity analysis. Dodds v. Richardson, 614 F.3d 1185, 1193-94 (10th Cir. 2010) (concluding that the legal analysis to demonstrate a constitutional violation under § 1983 and with respect to qualified immunity "is often related, if not identical").

"The doctrine of qualified immunity shields government officials from liability for civil damages when their conduct does not violate clearly established constitutional or other rights that a reasonable officer would have known." Hupp v. Cook, 931 F.3d 307, 317 (4th Cir. 2019) (quoting Sims v. Labowitz, 885 F.3d 254, 260 (4th Cir. 2018)). Accordingly, "[a]n official is not entitled to qualified immunity if he or she deprived an individual

8

**SMITH v. DAVIS**                                                          **1:20CV54**

**MEMORANDUM OPINION AND ORDER
DENYING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

of a constitutional right and that right was clearly established at the time of the violation." Id. (citing Pearson v. Callahan, 555 U.S. 223, 231 (2009)). The qualified immunity analysis therefore entails two determinations: (1) whether the plaintiff's rights were violated; and (2) whether those rights were clearly established. Id.

### 1. False Arrest

Smith first contends that Officer Davis violated his clearly-established Fourth Amendment rights by arresting him without probable cause. "[I]f a person is arrested when no reasonable officer could believe . . . that probable cause exists to arrest that person, a violation of a clearly established Fourth Amendment right to be arrested only upon probable cause ensues." Hupp, 931 F.3d at 318 (quoting Rogers v. Pendleton, 249 F.3d 279, 290 (4th Cir. 2001)). "Probable cause is determined by a 'totality-of-the-circumstances' approach." Id. (quoting Smith v. Munday, 848 F.3d 248, 253 (4th Cir. 2017)). However, that determination turns on two factors: (1) the suspect's conduct as known to the officer; and (2) the contours of the offense of arrest. Id.

9

**SMITH v. DAVIS** 1:20CV54

**MEMORANDUM OPINION AND ORDER**
**DENYING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Here, examining the contours of the offenses involved, Smith was arrested for (1) impeding traffic, (2) obstructing an officer, and (3) disorderly conduct (Dkt. No. 84-3 at 1-2). As to the charge of impeding traffic, West Virginia traffic law provides that "[n]o person shall drive a motor vehicle at such a slow speed as to impede the normal and reasonable movement of traffic except when reduced speed is necessary for safe operation or in compliance with law." W. Va. Code § 17C-6-3a. There is a genuine dispute of material fact regarding whether Officer Davis had probable cause to arrest Smith for impeding traffic. Although the video evidence establishes that Smith's vehicle was parked on a portion of the road, the parties disagree as to whether other vehicles could have maneuvered around it. Accordingly, there remains a material factual dispute over whether Officer Davis had probable cause to arrest Smith for impeding traffic.

Regarding Smith's arrest for obstructing an officer, in West Virginia, "[a] person who by threats, menaces, acts, or otherwise forcibly or illegally hinders or obstructs or attempts to hinder or obstruct a law-enforcement officer . . . acting in his or her official capacity is guilty of a misdemeanor." W. Va. Code § 61-

10

**SMITH v. DAVIS**                                                                                    **1:20CV54**

**MEMORANDUM OPINION AND ORDER
DENYING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

5-17(a). The Supreme Court of Appeals of West Virginia has confirmed that to obstruct an officer requires "forcible or illegal conduct that interferes with a police officer's discharge of official duties." State v. Davis, 735 S.E.2d 570, 573 (W. Va. 2012) (quoting State v. Carney, 663 S.E.2d 606, 611 (W. Va. 2008)). In the absence of force, "the key to determining whether conduct . . . constitutes the offense of obstruction under [W. Va. Code § 61-5-17] is whether the conduct at issue is illegal." State v. Carney, 663 S.E.2d 606, 610 (W. Va. 2008). Consequently, "lawful speech will not support an obstruction charge." Id. at 611. Specifically, an individual who speaks to an officer "without the use of fighting or insulting words or other opprobrious language" has not committed the offense of obstruction. Syl. Pt., State ex rel. Wilmoth v. Gustke, 373 S.E.2d 484 (W. Va. 1988).

There is a genuine dispute of material fact concerning whether Officer Davis had probable cause to arrest Smith for obstructing an officer. To begin, the parties dispute the language used by Smith and Officer Davis during their conversation; each contends the other used profane language. Further, Smith contends that he complied with Officer Davis's directives, both to take out his

11

**SMITH v. DAVIS** 1:20CV54

**MEMORANDUM OPINION AND ORDER
DENYING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

driver's license and also to put his hands behind his back when he was placed under arrest.

Regarding Smith's arrest for disorderly conduct, pursuant to W. Va. Code § 61-6-1b

> [a]ny person who, in a public place, . . . disturbs the peace of others by violent, profane, indecent or boisterous conduct or language or by the making of unreasonably loud noise that is intended to cause annoyance or alarm to another person, and who persists in such conduct after being requested to desist by a law-enforcement officer acting in his or her lawful capacity, is guilty of disorderly conduct, a misdemeanor.

A genuine dispute of material fact exists where it is unclear whether an individual's conduct has disturbed "others," excluding law enforcement officers. Maston v. Wagner, 781 S.E.2d 936, 951 (W. Va. 2015). Here, whether Smith was disturbing others by his conduct is in dispute.

Accordingly, because there are material facts in dispute concerning whether Officer Davis had probable cause to arrest Smith for any of the three offenses charged, the Court **DENIES** Officer Davis's motion for summary judgment on this Fourth Amendment claim, and turns next to consider Officer Davis's motion regarding Smith's excessive force claim.

**SMITH v. DAVIS**                                                1:20CV54

**MEMORANDUM OPINION AND ORDER**
**DENYING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**2. Excessive Force**

"A claim that a police officer employed excessive force is analyzed under the Fourth Amendment under an 'objective reasonableness' standard." Smith v. Ray, 781 F.3d 95, 100-01 (4th Cir. 2015) (quoting Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc)). Specifically, an officer's actions "do not amount to excessive force if they 'are "objectively reasonable" in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation.'" Id. at 101 (quoting Graham v. Connor, 490 U.S. 386, 397 (1989)). Moreover, the facts and circumstances must be analyzed "at the moment that the challenged force was employed." Id.

In addition, the evaluation of an officer's actions "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Id. (quoting Graham, 490 U.S. at 396 (internal quotation marks omitted)). A court "must give 'careful attention to the facts and circumstances of each particular case, including' three factors in particular: 'the severity of the crime at issue, whether the suspect poses an

13

**SMITH v. DAVIS**                                                            **1:20CV54**

**MEMORANDUM OPINION AND ORDER**
**DENYING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" Id. (quoting Graham, 490 U.S. at 396). "Ultimately, the question to be decided is 'whether the totality of the circumstances justifie[s] a particular sort of . . . seizure.'" Id. (quoting Tennessee v. Garner, 471 U.S. 1, 8–9 (1985)).

Here, a genuine dispute of material fact exists regarding whether Officer Davis's actions were objectively reasonable under the circumstances. Turning to the Graham factors, Smith was arrested for impeding traffic, obstructing an officer, and disorderly conduct, all of which are misdemeanors under West Virginia law. See W. Va. Code §§ 17C-6-3a, 61-5-17, 61-6-1b. While it is undisputed that Smith stopped his vehicle and walked toward Officer Davis's police cruiser, the parties disagree about each other's respective tone in the subsequent conversation. Moreover, it appears that Smith later complied with Officer Davis's request to provide his driver's license and also to place his hands behind his back to be handcuffed. Finally, Smith may not have resisted arrest. On the video, he can be seen placing his hands behind his

14

back before Officer Davis places him in handcuffs. Despite Officer Davis's contention otherwise, there is also no video evidence that Smith tried to leave the scene or evade arrest. Based on all this, it is for a jury to decide whether, under the totality of the circumstances, Officer Davis's actions were objectively reasonable. The Court therefore **DENIES** Officer Davis's motion for summary judgment on Smith's excessive force claim.

**B. State Law Claims**

With respect to Smith's state law claims, Officer Davis argues that they lack evidentiary support (Dkt. No. 84 at 4-6). Smith does not directly respond to this argument.

Under West Virginia law, "[p]robable cause to make a misdemeanor arrest without a warrant exists when the facts and circumstances within the knowledge of the arresting officer are sufficient to warrant a prudent man in believing that a misdemeanor is being committed in his presence." State v. Forsythe, 460 S.E.2d 742, 744 (W. Va. 1995). Moreover, "[a]n action for false imprisonment may be maintained where the imprisonment is without legal authority." Riffe v. Armstrong, 477 S.E.2d 535, 549 (W. Va.

1996) (quoting Vorholt v. Vorholt, 160 S.E. 916, 918 (W. Va. 1931)).

For the reasons previously discussed, genuine disputes of material fact exist regarding whether Officer Davis had probable cause to arrest Smith and, as a result, whether he had the legal authority to detain Smith. The Court therefore **DENIES** Officer Davis's motion for summary judgment with respect to Smith's state law claims of false arrest and false imprisonment.

## V. Conclusion

For the reasons discussed, the Court **DENIES** Officer Davis's motion for summary judgment.

It is so **ORDERED**.

The Clerk **SHALL** transmit copies of this Order to counsel of record.

DATED: April 22, 2022

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE